UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES McANALLY,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF STATE HOSPITALS, et al.,

Defendants.

Case No.: 1:26-cv-09214-CDB (PC)

**SCREENING ORDER**

Plaintiff James McAnally, a civil detainee, is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

## I. INTRODUCTION

On November 9, 2026, Plaintiff filed a complaint (Doc. 1), an application to proceed without payment (Doc. 2), a motion for temporary restraining order and preliminary injunction (Doc. 3), and a declaration concerning notice and request for expedited consideration (Doc. 4).

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners or civil detainees seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

**B. Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation" (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**C. Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or

knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV. DISCUSSION

### A. Plaintiff's Complaint

Plaintiff names the California Department of State Hospitals, Stephanie Clendenin (in her official capacity as director of state hospitals), Janine Wallace (in her individual and official capacities as executive director at Coalinga), and Jeffrey Billett, M.D. (in his individual and official capacities as medical director at Coalinga). (Doc. 1 at 1, 4.) He presents four claims and seeks injunctive relief, a declaratory judgment, compensatory and punitive damages, attorneys' fees and costs, and other relief deemed just and proper. (*Id.* at 10-16.)

### B. The Factual Allegations

Plaintiff contends he was diagnosed with Type One—insulin dependent— diabetes mellitus in 1972 and self-managed the condition for 51 years prior to his admission at the Department of State Hospitals-Coalinga (DSH-C). (Doc. 1 at 5.) Unlike Type Two diabetes, Plaintiff alleges his condition requires a patient's insulin dosage to be adjusted continually—and in his case, daily—based upon blood glucose level, planned food intake, and planned physical activity. (*Id.*) Plaintiff contends since his admission to DSH-C, he has been treated as though he has Type Two diabetes and is not permitted to adjust his own insulin dose in accordance with the foregoing, despite such personal adjustment being the standard of care for his Type One diabetes condition. (*Id.*)

Next, Plaintiff asserts he is "nominally permitted" to see an endocrinologist on a quarterly basis, but his appointments often occur four to six months apart. (Doc. 1 at 6.) Because that provider is the only person authorized to change Plaintiff's insulin dose, his insulin regimen cannot be adjusted regardless of changes in his blood glucose level, diet, or activity level. (*Id.*)

Plaintiff maintains that day-to-day insulin administration is performed at a unit "med window by medication-certified staff who are not physicians," including psychiatric technicians and nurse practitioners, consistent with the hospital's Nursing Policy and Procedure concerning the "Administration of Insulin and Other Antidiabetic Injections" or "NPP 513," rather than the treating endocrinologist or other physician familiar with Plaintiff. (Doc. 1 at 6.) Instead, Plaintiff alleges he must follow the dosing directed by staff at the med window regardless of his own needs assessment. (*Id.*)

Further, Plaintiff contends Defendants do not permit him to keep or use his own glucometer; rather, he must present himself at the unit's med window to check his blood glucose level; however, "Units 1, 3, and 4 are frequently unstaffed at the med window" and therefore Plaintiff is unable to monitor his blood glucose levels "even when clinically necessary." (Doc. 1 at 6.) Plaintiff asserts his request for a Freestyle Libre 3 continuous glucose monitoring system that would allow for continuous monitoring via a portable reader without reliance on staff and repeated finger sticks was denied by Defendants. (*Id.*)

Plaintiff asserts that NPP 513 "designates the 'Physician's Order-Subcutaneous Insulin' form (DSH-C 351) as 'standardized' and requires that it 'be used, as needed, for pre-meal insulin administration, correction/sliding scale coverage, BG finger sticks, hypo/hyperglycemic treatment, labs, etc.'" (Doc. 1 at 7.) Because the amount of insulin a patients receives is based only "where a blood glucose reading falls within ranges the medical provider fixed in advance," Plaintiff alleges the NPP 513 "contains no mechanism" for adjusting a patient's insulin based on carbohydrate intake and planned physical activity, "the two variable that, taken together with blood glucose level, [as] standard Type One diabetes management requires." (*Id.*) Further, Plaintiff alleges that because the DSH-C 351 form is not completed again following an initial 45-day order, and because he is seen by his endocrinologist only once per quarter allowing for new insulin orders, "the correction/sliding scale … provision governs Plaintiff's insulin dosing for weeks at a time regardless of intervening changes in his diet, activity, or glycemic control." (*Id.*) Plaintiff notes that NPP 513 permits certain patients to be "approved to self-administer insulin" after completion of a DSH-C 128 form, but the provision "governs only who physically performs the injection" rather than allowing the patients to "determine or adjust the dose administered" because the orders remain fixed, meaning the self-administration competency provided in NPP 513 is "not equivalent to, and does not provide, the insulin self-titration privileges Plaintiff's condition requires." (*Id.* at 8.)

Plaintiff contends that as a direct and proximate result of DSH-C's policies and practices, he began developing diabetic retinopathy and peripheral neuropathy within one year of his admission; Plaintiff asserts he had no diabetic complications during his 51-year period of self-managed care. (Doc. 1 at 8.) Those conditions have become more severe and Plaintiff asserts he has developed the first signs of kidney disease and has since been diagnosed with hyperlipidemia. (*Id.*) Further, Plaintiff contends because those conditions are progressive and permanent, he faces substantially increased risks of heart disease, limb amputation, kidney failure, and blindness. (*Id.*)

Next, Plaintiff states he has complained that a medication prescribed by a psychiatrist at DSH-C adversely affects his Type One diabetes condition and believes the psychiatric medication prescribed to him has not been coordinated with his diabetes condition, showing "the cumulative

effect" of DSH-C's "fragmented approach" to Plaintiff's diabetic care. (Doc. 1 at 9.) Plaintiff asserts he has repeatedly brought these allegations to the attention of the "Defendants and other state agencies," by filing numerous written complaints and appeals, thus placing Defendants on notice of the risk to his health. (*Id*. at 9-10.) Plaintiff contends their "response was inadequate to address, and did not in fact address, the underlying denial of self-titration privileges, glucometer access, or continuous glucose monitoring." (*Id*. at 10.)

**C. Plaintiff's Claims**

Fourteenth Amendment Deliberate Indifference to Serious Medical Needs

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993*); Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause*." Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, n.16 (1979)).

An official violates the Fourteenth Amendment rights of a civil detainee if their actions are "objectively unreasonable." *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (holding there was no subjective requirement for a Fourteenth Amendment claim of excessive force). This objective standard extends to other Fourteenth Amendment claims by civil detainees. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (holding the objective standard established by *Kingsley* extends to failure-to-protect claims). While *Kingsley* addressed excessive force claims and *Castro* only addressed failure-to-protect claims, the Ninth Circuit later held that "logic dictates extending the objective deliberative indifference standard articulated in *Castro* to medical care claims." *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018).

When filed by civil detainees, claims of violations of the right to adequate medical care proceed under Fourteenth Amendment and "must be evaluated under an objective deliberate indifference standard." *Id.* at 1125. The Ninth Circuit articulated the rule for evaluating objective deliberate indifference with respect to medical treatment:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. The third element is only satisfied if the defendant's actions were "objectively unreasonable." *Id*. The plaintiff must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Liberally construing the complaint and accepting all facts as true, Plaintiff plausibly alleges a Fourteenth Amendment inadequate medical care claim. He sufficiently alleges that Defendants Clendenin, Wallace, and Billett made an intentional decision with respect to the treatment of his Type One diabetes condition —e.g., by not allowing him self-administer the appropriate insulin dose based upon his blood glucose level, planned diet, and planned physical activities or to use a continuous blood glucose monitoring device —that places him at substantial risk of suffering serious harm, that Defendants did not take reasonable available measures to abate the risk even though a reasonable official in the circumstances would have done so —as established by Plaintiff's assertions that personal adjustments by a Type One diabetes patient are the standard of care for that condition—, and by not taking such measures Plaintiff has developed diabetic retinopathy, peripheral neuropathy, and hyperlipidemia, and faces increased risks of heart disease, limb amputation, kidney failure, and blindness. *Gordon,* 888 F.3d at 1125. Further, Plaintiff alleges these individuals are policymakers as concerns NPP 513, and the Court liberally construes and reasonably infers (*see* Doc. 1 at 12, ¶ 35, 37) that Plaintiff sufficiently alleges supervisory liability. *Waggy*, 594 F.3d at 713; *Redman*, 942 F.2d at 1446.

Americans with Disability Act/Rehabilitation Act (ADA/RA)

In Counts II and III, Plaintiff alleges violations of the ADA and RA.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); *Weinrich v. L.A. County Metro Transp. Auth*., 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The

Supreme Court has held that Title II of the ADA applies to public entities like state prisons. *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001); *Cunningham v. Kramer*, No. 1:15-cv-01362-AWI-MJS (PC), 2016 WL 4466370, at *5 (E.D. Cal. Aug. 24, 2016) ("The Court assumes that such protections extend also to civil detainees").

"Generally, public entities must 'make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" *Pierce v. County of Orange*, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)). "The term 'services, programs, or activities' as used in the ADA is … broad, 'bringing within its scope anything a public entity does.'" *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014) (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1021 (9th Cir. 2010); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *Weinrich*, 114 F.3d at 978.

Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." *Simmons*, 609 F.3d at 1022 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners .... The ADA does not create a remedy for medical malpractice")).

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. *United States v. Georgia*, 546 U.S. 151, 153 (2006). However, a state official sued in her official capacity is, in effect, a suit against the government entity and is an appropriate

defendant in an ADA action. *See Applegate v. CCI*, No. 1:16-cv-1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

To establish a violation of the RA, a plaintiff must show that (1) he is handicapped within the meaning of the RA; (2) he is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of a handicap; and (4) the program providing the benefit or services receives federal financial assistance. *Weinrich*, 114 F.3d at 978.

Liberally construing the complaint and accepting all facts as true, Plaintiff plausibly alleges a violation of the ADA against the California Department of State Hospitals. Plaintiff alleges he is an individual with a disability by virtue of his Type One diabetes.[1] As to the second element, it can be reasonably inferred that Plaintiff is otherwise qualified to participate in or receive the benefit of some of DSH-C's services, programs or activities, including its medical treatment services. Third, Plaintiff alleges he was denied reasonable modifications to DSH-C's policies, practices, and procedures— insulin self-titration privileges, reliable glucometer access, and continuous glucose monitoring —and asserts those modifications were necessary to avoid discrimination on the basis of his disability and that such reasonable modifications would not fundamentally alter the nature of the medical services the California Department of State Hospitals provides. *Simmons,* 609 F.3d at 1021; *Pierce*, 526 F.3d at 1215.

As concerns Plaintiff's RA claim, Plaintiff states a cognizable claim. As above, he asserts he is disabled within the Act's meaning and is otherwise qualified, that he was excluded from participation in and to benefit from the medical care program by reason of his disability, and that the California Department of State Hospitals receives federal financial assistance for its operations and programs at DSH-C. *Weinrich*, 114 F.3d at 978.

In short, Plaintiff states cognizable ADA/RA claims against Defendant California

---

[1] The statute defines "disability," in pertinent part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). Diabetes is a "physical impairment" because it affects the digestive, hemic, and endocrine systems, and eating is a "major life activity." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1038-40 (9th Cir. 2003)).

Department of State Hospitals.

Claim Seeking Declaratory Relief

In Claim IV, Plaintiff "seeks a judicial declaration of the parties' rights and obligations," citing to 28 U.S.C. sections 2201[2] and 2202.[3]

To the extent Plaintiff's complaint seeks a declaratory judgment (*see* Doc. 1 at 16 ["Enter a declaratory judgment that …]), it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). 28 U.S.C. section 2201 "does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mexico, Inc. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014).

A claim for declaratory relief may be "unnecessary where an adequate remedy exists under some other cause of action." *Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109-LHK, 2015 WL 4554377, at *7 (N.D. Cal. July 28, 2015) (quotation and citation omitted) However, "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. In any event, at the screening stage, a further analysis concerning a declaration that any defendant violated Plaintiff's

---

[2] This section, titled "Creation of remedy, provides: "In a case of actual controversy within its jurisdiction, except with respect to . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

[3] Titled "Further relief," this section states: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

rights is unnecessary and premature.

## V. CONCLUSION AND ORDER

Based upon the foregoing, Plaintiff's complaint states cognizable Fourteenth Amendment deliberate indifference to serious medical needs claims (Count I) against Defendant Clendenin, Wallace, and Billett, and ADA/RA claims (Claims II and III) against Defendant California Department of State Hospitals.

The Court will issue a separate order regarding service.

IT IS SO ORDERED.

Dated: **November 12, 2026**

UNITED STATES MAGISTRATE JUDGE